T.C. Memo. 1996-297


UNITED STATES TAX COURT


JOHN K. JORMAN, JR. AND AUDREY JORMAN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9379-94.                    Filed June 26, 1996.


John K. Jorman, pro se.

Brian M. Harrington, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

CARLUZZO, Special Trial Judge:  This case was heard pursuant to section 7443A(b)(3) and Rules 180, 181, and 182.[1]  Respondent determined a deficiency in petitioners' 1991 Federal income tax

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

in the amount of $6,339 and an accuracy-related penalty under section 6662(a) in the amount of $1,268.

After concessions by the parties, the issues for decision are: (1) Whether petitioners are entitled to an itemized deduction for moving expenses; (2) whether John K. Jorman was engaged in a trade or business related to the real estate industry during the year 1991 so as to allow for deductions under section 162(a); and (3) whether petitioners negligently filed their 1991 Federal income tax return so as to render them liable for the accuracy-related penalty imposed by section 6662(a).

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. During the year in issue, petitioners were husband and wife and filed a joint Federal income tax return. At the time that the petition was filed, John K. Jorman resided in Plainfield, Indiana, and Audrey Jorman resided in Indianapolis, Indiana. References to petitioner are to John K. Jorman.

FINDINGS OF FACT

During the year in issue, petitioner was employed as a customer service supervisor with PSI Energy, Inc. (PSI). Petitioner began his employment with PSI on March 30, 1990, in Bloomington, Indiana. When he started with PSI he was living in Indianapolis, Indiana. He moved to an apartment in Bloomington sometime in May or June of 1990. Toward the end of 1990,

petitioner was promoted and transferred to Kokomo, Indiana, which is approximately 120 miles from Bloomington. His assignment with PSI in Kokomo began in January of 1991.

Prior to his transfer, petitioner traveled to Kokomo by car on several occasions to look for a place to live and eventually rented an apartment there. He moved into this apartment in late January 1991. After his transfer was effective, and before he moved into his apartment in Kokomo, petitioner resided with a friend in Fishers, Indiana, for 4 weeks. Petitioner testified that he paid his friend $100 per week, or a total of $400, for such lodging but offered no corroborating evidence on this point. During this same time period he spent approximately $20 per week on groceries and a total of $60 for meals in restaurants.

There is insufficient evidence in the record to determine whether petitioner incurred any penalty for terminating his lease on the Bloomington apartment. In connection with the acquisition of the apartment in Kokomo, petitioner incurred expenses for new curtains and other furnishings.

During 1991, PSI had in effect an employee relocation program, part of which provided financial and other assistance to employees transferred from one company location to another. Petitioner qualified for benefits under this program, evidenced by a Miscellaneous Expenses Allowance Agreement entered into by petitioner and PSI on January 7, 1991. Although not exactly clear from the record, it appears that petitioner received

$8,352.39 in relocation benefits directly or indirectly from PSI
as a result of his transfer from Bloomington to Kokomo.  Included
in the amount of relocation benefits received by petitioner were
the following items:

| | |
|---|---|
| Amount paid to third party for transportation and storage of household goods and personal effects | $1,247.25 |
| Amount paid to petitioner for lodging incurred in his move from Bloomington to Kokomo | 22.60 |
| Amount paid to petitioner for expenses incurred in selling, buying, or leasing a residence | 416.68 |

The entire amount of the relocation benefits received by
petitioner in 1991 was included in his Form W-2 wages and
reported on petitioners' 1991 return.

On their 1991 return petitioners claimed an itemized moving
expense deduction in the amount of $3,897.18 computed as follows:

| | |
|---|---|
| Transportation and storage expenses in moving household goods and personal effects | $1,247.25[2] |
| Travel, meals and lodging expenses in moving from old to new residence | 298.25 |
| Pre-move travel, meals, and lodging in looking for a new residence after getting a job incurred from 1/1-1/31/91 | 1,344.00 |
| Expenses of settling an unexpired lease | 412.68 |

---

[2]This amount was paid directly by PSI to third parties on
petitioner's behalf.

Expenses of getting a new lease                    595.00

Total claimed deduction                            3,897.18

In addition to his employment with PSI during 1991, petitioner also maintains that he was in some trade or business related to the real estate industry.  Petitioner held licenses to appraise, broker, and sell real estate during the year in issue.  A Schedule C included with petitioners' 1991 return reflects the following items:

| | |
|---|---:|
| Gross receipts | -0- |
| Gross income | -0- |
| | |
| Car and truck expenses | $10,000 |
| Office expense | 4,345 |
| Taxes and licenses | 50 |
| Other expenses | |
|     Materials | 4,100 |
|     Journal | 78 |
| | |
| Total expenses | 18,573 |
| Net loss | 18,573 |

Petitioner provided little detail as to how the specific amounts of the deductions were computed.  He did testify that the automobile deduction related to a 1978 Buick Regal and a 1980 Oldsmobile Cutlass, vehicles that were acquired by petitioners prior to 1991.  He also testified that included in office expenses were items such as cable television services fees, newspaper and magazine subscriptions, and the costs of acquiring a sofa, computer table, and other items of furniture, as well as a portion of the rent paid on his Kokomo apartment.  Petitioner

maintained a separate bank account for the real estate activity; however, most of the checks entered into evidence that were drawn on the account were made payable to "cash". Petitioner described the nature of his real estate activity for years prior to 1991 but provided no information concerning what he was doing in 1991.

OPINION

Respondent disallowed the entire moving expense deduction based upon lack of substantiation. Respondent disallowed all of the deductions claimed on the Schedule C upon the ground that petitioner's real estate activity did not constitute a trade or business within the meaning of section 162(a). Petitioners claim that they have satisfied all of the provisions of section 217, and with the exception of certain PSI records, rely exclusively on petitioner's testimony to support the amount of the deduction claimed. Petitioner also claims that he was engaged in some real estate business during 1991 and relies primarily upon his history of such activity in the years 1985 through 1988.

Respondent's determinations, having been made in a notice of deficiency, are presumed correct, and petitioners bear the burden of proving such determinations to be erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Furthermore, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he is entitled to any deduction claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435,

440 (1934); Welch v. Helvering, supra.  In addition, a taxpayer is required to keep books or records to substantiate all deductions which are claimed.  Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.  Where a taxpayer fails to produce any records to substantiate his deductions, disallowance of the claimed deductions is proper.  Williams v. Commissioner, T.C. Memo. 1986-195.

## Moving Expense Deduction

Ordinarily, moving expenses are considered nondeductible family and living expenses.  However, subject to certain requirements neither relevant nor in dispute in this case, section 217 permits a deduction for all reasonable moving expenses paid or incurred during the taxable year in connection with the commencement of work as an employee at a new principal place of work.  Whether a claimed moving expense is reasonable is a question of fact to be determined under the circumstances of the particular move.  Sec. 1.217-2(b)(2), Income Tax Regs.  A taxpayer is required to prove the expenses incurred.  See Haberthier v. Commissioner, T.C. Memo. 1984-377.  Petitioners' proof in support of the disputed moving expense deduction consists of petitioner's testimony and records from PSI relating to the amount of relocation benefits petitioner received.  After

considering such evidence we find that petitioners are entitled to a moving expense deduction in the amount of $1,524.25.[3]

Schedule C Deductions

Petitioner is no doubt connected in some fashion with the real estate industry, as evidenced by the licenses he holds and his activities in prior years. However, it is clear that petitioner was not engaged in any real estate business during 1991. Although petitioner testified as to what he did in other years, he provided no explanation whatsoever regarding what his real estate activity consisted of in 1991. The introduction of checks made payable to "cash" and drawn on some "business" account tells us little, if anything, about the nature of the activity. In those instances where a check was made payable to a specific payee, it appears that the transaction involved a personal rather than a business expense.

In countless opinions far too numerous to cite, including one involving petitioner,[4] this Court has resolved disputes

---

[3]The deduction is computed as follows: Expenses incurred for transportation of household goods ($1,247.25), plus two round trips by car from Bloomington to Kokomo for househunting, at the standard mileage rate provided in Rev. Proc. 90-59, 1990-2 C.B. 644 (2 round trips x 240 miles per trip x $.275 per mile = $132), plus travel by car from Bloomington to Kokomo in connection with the move (120 miles x $.275 = $33), plus total meal expenses for househunting and temporary quarters ($140 x .80 = $112).

[4]In Jorman v. Commissioner, T.C. Memo. 1994-613, we held that petitioner's real estate activity was not engaged in with an actual and honest profit objective in 1990 so as to allow for deductions under sec. 162(a).

between taxpayers and the Commissioner involving whether certain activities constituted trades or businesses for purposes of section 162(a). In resolving such disputes we are required to focus upon the nature of the activity involved. Needless to say, before we can determine whether an activity constitutes a trade or business, we must know what the activity is. In this case, we have no idea what petitioner's real-estate-related activity was in 1991. Without knowing the nature and the extent of the underlying activity, we cannot determine whether such activity was conducted by petitioner regularly and with continuity with the primary purpose of earning a profit. Absent such findings we are unable to conclude that petitioner was engaged in a real-estate-related trade or business during 1991. See Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). Because petitioner has failed to meet his burden of proving that the deductions in dispute relate to expenses paid or incurred in connection with an activity that constitutes a trade or business, respondent's adjustments disallowing the deductions are sustained.

Accuracy-Related Penalty

Respondent determined that petitioners were liable for the accuracy-related penalty pursuant to section 6662(a) in the amount of $1,268 for the year 1991. Section 6662(a) and (b)(1) imposes a penalty on any portion of an underpayment which is attributable to negligence or disregard of rules or regulations. The term "negligence" includes any failure to make a reasonable

attempt to comply with the statute, and the term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). Respondent's determination is presumed correct, and petitioners bear the burden of proving that they are not liable for the accuracy-related penalty under section 6662(a). Rule 142(a); Welch v. Helvering, supra at 115 (1933); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972).

Petitioners produced little substantiating evidence in support of the moving expense deduction in dispute in this matter. Furthermore, they failed to explain why all but one of the components of the deduction were in excess of what substantiating evidence they did produce. Likewise, petitioners produced substantiating evidence for only a small portion of the deductions claimed on the Schedule C. Had we resolved the trade or business issue in favor of petitioners, most of the deductions would have been denied for lack of substantiation anyway. Given petitioners' prior experience in this Court, they were no doubt aware that the production of substantiating evidence was expected and necessary to support their claimed entitlement to the deductions in dispute. We can only conclude that their failure to produce substantiating evidence results from their failure to have maintained adequate books and records as required by section 6001 and the corresponding regulation. In our view, petitioners' failure to explain the excessive deductions claimed along with their recordkeeping deficiencies constitute at least a careless

disregard of rules or regulations within the meaning of section 6662(b)(1) and (c), which renders them liable for the penalty imposed by section 6662(a), and we so hold.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.